# Exhibit A

SUMMONS IN A CIVIL ACTION COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV17888502 | D1 FX | 33719489 |

Rule 4 (B) Ohio

Rules of Civil Procedure

# SUMMONS

| | |
|---|---|
| SUMMIT GARDENS ASSOCIATES ET AL | PLAINTIFF |
| VS | |
| CSC SERVICEWORKS, INC. | DEFENDANT |

CSC SERVICEWORKS, INC.
303 SUNNYSIDE BLVD, SUITE 70
PLAINVIEW NY 11803

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Said answer is required to be served on:



Plantiff's Attorney

RONALD P FRIEDBERG
28601 CHAGRIN BLVD. SUITE 500

CLEVELAND, OH 44122-0000

Case has been assigned to Judge:

BRENDAN J SHEEHAN
Do not contact judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Nov 6, 2017 |

By________________________
Deputy

COMPLAINT FILED 11/03/2017



CMSN130




**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed:**
**November 3, 2017 15:28**

By: PATRICK J. PEROTTI 0005481

Confirmation Nbr. 1216442

SUMMIT GARDENS ASSOCIATES ET AL — CV 17 888502

vs.

CSC SERVICEWORKS, INC. — **Judge:** BRENDAN J. SHEEHAN

**Pages Filed:** 23

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

SUMMIT GARDENS ASSOCIATES
P.O. Box 22674
Beachwood, OH 44122

and

SUNNYSLOPE INVESTMENTS NO. 1, LTD.
P.O. Box 102
Cuyahoga Falls, OH 44222

Plaintiffs,

vs.

CSC SERVICEWORKS, INC.
303 Sunnyside Blvd, Suite 70
Plainview, NY 11803

Defendant.

CASE NO.

JUDGE

**CLASS ACTION COMPLAINT**

**(Jury Demand Endorsed Hereon)**

Now come Plaintiffs, individually and as representatives of all others similarly situated, and for their Class Action Complaint state the following:

## INTRODUCTION

This class action is simple and relates to one issue and one issue only: Defendant CSC ServiceWorks, Inc. ("CSC") charging Plaintiffs and all others similarly situated an additional fee in breach of the lease agreements governing the subject transactions. CSC leases space from owners of apartment buildings and other small business entities like Plaintiffs for the installation and operation of coin- and/or card-operated laundry equipment. In exchange, CSC pays Plaintiffs and its other lessors a portion of the collections from the laundry machines as rent. Beginning in May of 2017, CSC began unilaterally imposing a new "Administrative Fee" upon Plaintiffs and

its other lessors, which CSC unilaterally deducted from its rental payments to Plaintiffs and its other lessors. This fee was not authorized anywhere in the standard laundry room leases that CSC entered into with its lessors. This class action is brought on behalf of these lessors, and seeks refunds of these improper fees and other relief.

**PARTIES**

1. Plaintiffs Sunnyslope Investments No. 1, Ltd. ("Sunnyslope") and Summit Gardens Associates ("Summit Gardens") are Ohio limited liability companies (Sunnyslope and Summit Gardens are collectively referred to as "Plaintiffs").

2. Sunnyslope owns apartment buildings located in the County of Cuyahoga, and City of Maple Heights, Ohio.

3. Summit Gardens owns apartment buildings in the County of Portage, and City of Kent, Ohio.

4. CSC is a Delaware Corporation, registered to do business in Ohio.

5. CSC does business in Cuyahoga County, Maple Heights, Ohio, among other locations in Ohio.

**BACKGROUND AND GENERAL FACTS**

6. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

7. Since 2013, CSC has been the leading provider of multifamily residential and commercial laundry solutions nationwide.

8. CSC's laundry solutions consist of, among other things, leasing laundry room space in apartment buildings, college housing, and other locations from business owners like Plaintiffs to install laundry equipment for the use of the tenants in those locations.

9. The subject leases provide for CSC's installation, maintenance, and operation of coin- and/or card-operated laundry equipment in these laundry rooms.

10. In exchange for CSC's installation, maintenance, and operation of coin- and/or card-operated laundry equipment in these laundry rooms, Plaintiffs and other lessors are paid rent, consisting of a portion of the money collected from the laundry equipment by CSC.

11. The subject leases are various versions of CSC's standard laundry room lease agreement (the "Standard Leases"), which set forth the amount of rent to be paid, and which contain a clause providing that the Standard Lease is the entire agreement between the parties and may not be modified except through a writing signed by both parties.

12. Plaintiffs and all other putative class members executed Standard Leases.

13. CSC conducts its laundry operations in the United States under its own name, and through its brands which include Coinmach, Mac-Gray, Appliance Warehouse, ASI Campus Laundry Solutions, Super Laundry, Kwik Wash, and SDi Laundry Solutions.

14. CSC has over 1 million machines in service in the United States.

15. Prior to 2013, the Standard Leases were executed by various CSC-related entities such as Coinmach, Mac-Gray, etc. Since 2013, the Standard Leases have been executed in the name of CSC.

16. For Standard Leases in the names of other CSC-related entities such as Coinmach, CSC is obligated under and bound by those Standard Leases and is making the rental payments under them to Plaintiffs and the class members. For example, with respect to Standard Leases in Ohio executed by Coinmach, a September 21, 2015 filing with the Ohio Secretary of State indicates Coinmach Corporation's change of its name to CSC ServiceWorks, Inc.

17. In or around May of 2017, Mark Hjelle, CSC's Chief Executive Officer, sent a letter (the "May 2017 Letter") to the named Plaintiffs and the other lessors stating, in relevant part:

> … we are … facing increased costs in nearly every aspect of our business. In the past, we have offset some of these costs with efficiency improvements and by leveraging our scale, but we are no longer able to absorb these costs alone…
>
> In the past, we have not used **provisions in our agreement with you to share these increased costs**. As we continue to align your interests (high occupancy rate of satisfied residents) with ours (to achieve an acceptable operating margin) and to jointly provide a great laundry experience for your residents, it is necessary to begin to share the agreed upon costs **as outlined in our agreement**.
>
> Beginning this month, you will see an **Administrate Fee of 9.75% (or approximately .10 cents per day, per machine) deducted from your gross collections.** This deduction will help offset costs related to taxes, vandalism and applicable administrative and other costs… For more information about the Administrative Fee…, visit our website at **http://cscsw.com/feetransparency/.** (Emphasis in original in part and added in part.)

18. Contrary to the May 2017 Letter, ***nothing*** in the Standard Leases authorizes CSC's charging of this unilaterally imposed Administrative Fee.

19. Further, as stated in paragraph 11 above, the Standard Leases contain standard "ENTIRE AGREEMENT" language providing that the Standard Lease constitutes the entire agreement between the parties and may not be modified except by a writing signed by both parties.

20. By unilaterally imposing the above-described Administrative Fee, the Standard Leases have been wrongfully amended, altered, and/or modified, and therefore breached by CSC.

21. Summit Gardens entered into its Standard Lease on or about October 12, 1998, and Sunnyslope entered into its Standard Lease on or about September 21, 2015. True and accurate copies of these Standard Leases are attached as Exhibits 1 and 2.

22. The Plaintiffs' Standard Leases contain the standard "entire agreement" language referenced in paragraphs 11 and 19 above. See Exhibit 1, para. M; Exhibit 2, para. 18.

23. Plaintiffs received the May 2017 Letter that indicating that CSC would be unilaterally imposing the new Administrative Fee on them. A true and accurate copy of the May 2017 Letter received by Sunnyslope is attached as Exhibit 3, and a true and accurate copy of the May 2017 Letter received by Summit Gardens is attached Exhibit 4. The letters are identical.

24. Shortly thereafter, CSC started assessing the Administrative Fee, which was subtracted from the rent payments due and owing to Plaintiffs as a deduction from gross collections.

25. Plaintiffs have not been paid the full rent amounts due and owing under the Standard Leases, because of CSC's unilateral and wrongful subtraction of the Administrative Fee from the rent payments made to Plaintiffs.

26. By unilaterally assessing the above-described Administrative Fee, CSC has breached the Standard Leases entered into with Plaintiffs and all other lessors.

## CLASS ALLEGATIONS

27. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

28. Plaintiffs bring this action on behalf of themselves and on behalf of a proposed class consisting of:

> All persons and/or entities whose rent payments under leases with CSC or any of its subsidiaries or related entities were reduced by the amount of the Administrative Fee referenced in the letter from CSC sent and received in or around May, 2017.

29. This class numbers over forty (40) persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

30. The injuries and damages to these class members present questions of law and fact that are common to each class member, and that are common to the entire class as a whole.

31. CSC has engaged in the same conduct set forth herein by Plaintiffs with respect to all other putative class members.

32. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members. Those questions include whether there is any provision in CSC's contract with the class members which allows CSC to assess the challenged fee; if not, whether the assessment of that fee was a breach of the contract; if so, the proper way to calculate the amount of damages for which CSC is liable to the class members, and whether that amount should include interest (and from when and at what rate).

33. The claims and injuries of the representative Plaintiffs, and any potential defenses thereto, are typical of the claims, injuries and defenses relating to the entire class, and the claims, injuries and defenses relating to each class member are typical of those relating to the entire class.

34. The representative Plaintiffs will fully and adequately protect and represent the entire class, and all of its putative class members.

35. The identity of all members of this class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from CSC and others.

36. The prosecution of separate actions by each member of this class would create a substantial risk of inconsistent or varying adjudications with regard to individual members of the class that would establish incompatible standards of conduct for CSC.

37. The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of the class which, as a practical matter, would be dispositive of the interests of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Further, the maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

38. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

39. Plaintiffs entered into the Standard Leases attached hereto, by which Plaintiffs agreed to lease a laundry room area in exchange for rent payments of a stated amount of the collections from the laundry equipment installed and operated therein. In the case of Summit Gardens, the stated amount was 58% of the collections, and in the case of Sunnyslope, the stated amount was 50% of the collections.

40. The Standard Leases contain the standard "entire agreement" language discussed above, prohibiting changes to the Standard Leases except by a writing signed by both parties.

41. Plaintiffs fully performed their obligations under the Standard Leases, or the same were waived.

42. CSC sent Plaintiffs the May 2017 Letter signed by Mark Hjelle, CSC's Chief Executive Officer, unilaterally assessing an "Administrative Fee of 9.75%" against Plaintiffs'

rent payments under the Standard Leases. The May 2017 Letter stated that the Administrative Fee would be "deducted from your [Plaintiffs'] gross collections" by CSC.

43. The Administrative Fee was thereafter subtracted by CSC from Plaintiffs' rent payments.

44. This Administrative Fee reduced the amount Plaintiffs were paid for rent under the Standard Leases.

45. Plaintiffs did not execute any written modification or amendment to the Standard Leases that permitted this Administrative Fee.

46. CSC's unilateral assessment of the Administrative Fee was a breach of the Standard Leases.

47. As a direct and proximate result of such breach, Plaintiffs have suffered damages in the amount of the Administrative Fees deducted from Plaintiffs' rent payments under the Standard Leases.

48. The putative class members: similarly entered into Standard Leases, which similarly provided for stated rent payments, and similarly contained the "entire agreement" language requiring that any amendments or modifications to the Standard Leases occur only through a writing signed by both parties; similarly did not execute a written amendment or modification to the Standard Leases permitting CSC to assess the Administrative Fee; similarly had their rent payments reduced through CSC's assessment of the Administrative Fee; and were similarly damaged in the amount of said reductions.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment as follows:

1. For an Order determining at the earliest possible time that this matter may proceed as a class action under Civil Rule 23 and certifying this case as such;

2. For compensatory damages;

3. For disgorgement;

4. For reasonable attorney's fees and other expenses; and,

5. For such other or further relief to which this Honorable Court deems Plaintiffs and the class entitled (including, but not limited to, interest at the statutory rate).

Respectfully submitted,

/s/ Patrick J. Perotti
Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Frank A. Bartela, Esq. (#0088128)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, OH 44077
Ph: (440) 352-3391 Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com

/s/ Ronald P. Friedberg
Ronald P. Friedberg, Esq. (#0055304)
**MEYERS, ROMAN, FRIEDBERG & LEWIS**
28601 Chagrin Boulevard, Suite 500
Cleveland, OH 44122
Ph: (216) 831-0042 Fax: (216) 831-0542
Email: rfriedberg@meyersroman.com

*Attorneys for Plaintiffs*

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury, by the maximum number of jurors allowed by law, on all issues so triable.

/s/ Patrick J. Perotti
Patrick J. Perotti, Esq. (#0005481)

EXHIBIT 1

# LAUNDRY ROOM LEASE AGREEMENT

**LESSEE:** CSC ServiceWorks, Inc
Address: 8515 S Freeway Dr., Suite D
Macedonia, OH 44056

**LESSOR:** Sunnyslope Investments No. 1, LTD
Address: P.O. Box 102
Cuyahoga Falls, Ohio 44222

Execution Date: 09/21/2015

In consideration of the mutual covenants, duties and obligations set forth herein, Lessor and Lessee hereby agree as follows:

1. Lessor warrants and represents that Lessor is the owner, or authorized agent of the owner, of a certain property named Sunnyslope Terrace located at 5383 Sunnyslope Dr., #57, Maple Heights, OH 44137 containing 80 apartment or condominium units (the "Premises"). Lessor does hereby rent to the Lessee that part of the Premises, as set forth in the attached **Schedule A** (the "Leased Premises"). Lessee shall have exclusive use and possession of the Leased Premises to install, operate and maintain therein the following pay-per-use laundry equipment (the "Equipment"):

| Quantity | Make | Model | Description |
|---|---|---|---|
| **(10)** | **Speed Queen** | **SWNNY2AP113TW01** | **Top Load Card Operated Quantum Washer** |
| **(10)** | **Speed Queen** | **SDGY07** | **Card Operated MDC Gas Dryers** |
| **(1)** | **ESD** | **VTM** | **Value Transfer Machine** |

Lessor warrants and represents that zero units are plumbed with their own washer or dryer connections. During the Term as defined herein, Lessee shall also have the exclusive right to lease any additional laundry space which Lessor designates within the Premises including, without limitation, any expansion of the Leased Premises, upon the same terms and conditions as set forth in this Lease.

2. The term of this Lease (the "Original Term") shall be for a period of Ten (10) years beginning 08/24/2015 or the date of installation of the Equipment, whichever is later (the "Commencement Date"). Lessor and Lessee agree the Original Term shall be automatically extended for successive additional terms of one year (each an "Extended Term"), upon the same terms and conditions as herein contained unless Lessor or Lessee provides written notice by certified mail, return receipt requested, of its election not to extend the lease, and such notice is received by the other party at least sixty days, but not more than one year, prior to the expiration of the Original Term, or Extended Term as applicable. The Original Term and the Extended Term collectively are hereinafter referred to as the "Term".

3. Lessee agrees to pay Lessor as rent (the "Rent") from the income of the Equipment, monthly, in arrears, having first deducted the cost of smart cards, refunds, all applicable fees and/or taxes, including, but not limited to, sales, use, excise, personal property or real estate taxes payable by Lessee in connection with the use and possession of the Leased Premises and the operation of the Equipment, an amount equal to fifty percent (50%) of the adjusted collections per month. Additionally, Lessee shall pay to Lessor, as additional rent, an additional 20% of all revenue in excess of $18,000.00 per year. The rental commission base deduction amount shall be adjusted annually to reflect increases or decreases in the Consumer Price Index (CPI) of the Bureau of Labor Statistics of the United States Department of Labor- seasonally adjusted for U.S. average. Notwithstanding the above, Lessee shall be entitled to earn as minimum compensation an amount equal to one dollar per day per installed washing machine, per installed dryer and per install vtm for each calendar day of the applicable year. Lessee may deduct from Rent otherwise due if necessary to attain said minimum compensation. If, during the Term of this Lease,-vacancies on the last calendar day of the rental period exceed 10% Lessee may reduce the Rent due for such period by 10% of the monies collected from the Equipment.

4. Lessor agrees that Lessee shall have the right to determine the quantity and type of Equipment on the Leased Premises, and the price of each machine cycle, subject to Lessor's prior written approval, which approval shall not be unreasonably withheld or delayed. Lessor agrees that Lessee shall have the right to determine the dates and times of collection.

5. Lessor hereby warrants and represents that the signatories to this Lease have full power and authority to enter into this Lease. Lessor and its representatives or agents further warrant and represent that there is no other lease, license, or other instrument granting to another party the same or similar right in and to the Leased Premises or the Premises.

6. Lessee shall insure against liability for bodily injury or property damage caused by Lessee up to an amount of not less than $10 million. Lessee shall name Lessor as an additional insured under such policy for injuries or damages due to Lessee's negligence occurring in the Leased Premises and shall furnish a certificate of insurance evidencing such coverage upon

request by Lessor. Notwithstanding the foregoing, Lessee shall not be responsible for injury or damage caused by a breach of this Lease by Lessor.

7. This Lease, in all respects, shall be construed as a lease for real property and not a license. This Lease shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto, including, but not limited to, a successor as a result of the sale or conversion of the Premises to any other owner or form of ownership including condominiums. Lessor also covenants that in the event the Premises is sold or transferred it shall be a condition of any such sale or transfer that the prospective purchaser or transferee take an express assignment of the Lease at the time of transfer of deed and be bound by all of its terms and conditions. Failure of the Lessor to secure said assignment shall, at Lessee's option, constitute a breach of the Lease and shall not serve to relieve Lessor or the purchaser or transferee of any of the obligations under the Lease which shall continue for the remainder of the Term. Lessor may assign its interest in this Lease to any such purchaser and Lessee shall consent thereto. This Lease is subordinate to all mortgages currently placed on the premises. Further, Lessee agrees to promptly execute, at the request of Lessor, a Subordination Agreement, subordinating this Lease to any and all current and or future mortgages now or hereafter placed upon the Premises by Lessor; provided, however, that such subordination shall be upon the express condition that this Lease shall be recognized by the mortgagee under the mortgage and that the rights of Lessee hereunder shall remain in full force and effect during the Term of this Lease so long as Lessee is not in default under this Lease. Lessee agrees that this Lease shall remain in full force and effect notwithstanding any default or foreclosure under any such mortgage or deed of trust. Lessee will, promptly upon request by Lessor, execute and deliver to Lessor instrument(s) reasonably required to further evidence the provisions of this section, including an estoppel certificate if so requested and, notwithstanding anything herein to the contrary, such subordination, nondisturbance and attornment agreements as customarily required by lenders ("Subordination Agreement").

8. Lessee and Lessor may enter into a notice or memorandum of Lease in recordable form. Lessee may record same at the appropriate registry. Lessor further agrees that Lessee may post notice labels on its machines in the laundry room(s).

9. This Lease shall be construed according to the laws of the state in which the Premises are located. If any provision of this Agreement shall, for any reason, be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision. Lessor and Lessee agree that any court of record in the county in which the Premises are located or corresponding United States District Court shall have jurisdiction with respect to any proceedings arising under this Agreement.

10. Any terms and conditions set forth in any duly signed addendum or schedule are expressly incorporated by reference. Each party represents that it understands and agrees to the terms and conditions of this Lease.

## GENERAL TERMS AND CONDITIONS OF LEASE

A. Subject to reasonable security measures, Lessee and residents of the Premises shall have access to the Leased Premises at all times. If the Leased Premises are kept locked, Lessee is to be furnished with keys and/or entry code(s), as necessary, sufficient to provide access thereto, and to ensure Lessee's ingress, egress or use of the Leased Premises.

B. Title to the Equipment shall remain with Lessee at all times. Lessor shall not move or remove, disconnect, or tamper with the Equipment for any reason whatsoever unless expressly authorized by Lessee. If Lessee's business is interrupted as a result of Lessor's acts or omissions, then Lessee may extend the current Term of the Lease for a period of time equal to the period of such interruption by written notice to Lessor.

C. Lessor is responsible for the following related to the Leased Premises:

   a. Cleaning the Leased Premises, including windows, and maintaining same in good condition and repair and ensuring that the Premises comply with all state, county or municipal building and safety codes including fire safety codes;

   b. Providing electricity, plumbing, hot and cold water, gas, sewage disposal, drainage, and all other utilities required for the proper and safe use of the Equipment as well as cleaning and maintaining the dryer vent system that is external to the laundry room.

   c. If required to operate the Equipment, providing internet access including installation and operating costs associated with the internet connection as well as 110v power outlet.

   d. Promptly notifying Lessee in the event that the Equipment ceases to operate in a normal manner.

D. Lessee is responsible for the following services to the Lessor and related Equipment and Leased Premises:

a. Providing password protected on-line access to Lessor's account information and a Web-based system for requesting a service call directly to Lessee's designated service technician.

b. Cleaning and maintaining, on an as-needed basis, flexible and rigid venting from the back of the dryers to the interior wall and ceiling surfaces.

c. Servicing the Equipment on a regular basis and maintaining same in good operating condition.

E. Lessor warrants that the Leased Premises have adequate utilities, floor drainage, and proper venting, and that there are no building code violations that will adversely affect Lessee's ability to install, operate or maintain its Equipment at the Leased Premises.

F. If, at any time during the Term, Lessor grants permission to individual units to install laundry equipment, or provides laundry hookups for the installation of laundry equipment, Lessee shall be entitled to (1) reduce the Rent by a proportionate amount; or (2) at the sole option of Lessee, terminate this Lease and recover damages for material breach of the Lease. Lessor shall provide Lessee, when requested, with true and accurate information regarding the number of in-unit hook-ups of laundry equipment.

G If, in the reasonable discretion of the Lessee, service to the Equipment becomes excessive as a result of Lessor's or any user's misuse of the Equipment, unwarranted requests for service, interruption in the supply of any utilities, or vandalism to the Equipment or the Leased Premises, Lessee may terminate this Lease and remove all of the Equipment and all obligations of Lessee under this Agreement shall cease.

H. Either party may terminate this Agreement and recover damages, including but not limited to incidental and consequential damages if: a) The other party commits any material breach of this Agreement which is not capable of being remedied; or b) The other party commits a breach of this Agreement which is capable of being remedied and fails to remedy the breach within 30 days after receipt of written notice of the default or within such longer period as may be specified in the notice of default. The prevailing party shall be entitled to recover all costs and reasonable attorney's fees incurred to enforce the Lease.

I. Any notices concerning the Lease shall be sent by certified mail, return receipt requested, or via recognized overnight mail service with delivery tracking receipt, to the address shown on the first page of this Lease, or such other address as specified by the parties in writing. Notice shall be effective upon receipt.

J. Lessor warrants that Lessee shall be granted peaceable and quiet enjoyment of the Leased Premises free from any eviction or interference by Lessor, provided Lessee pays the Rent and otherwise performs its obligations.

K. Lessor is responsible for security, including maintenance and repair of all doors, gates, hinges, frames, and door strikes. Lessor is responsible for any claims of personal injury or property damage arising from lack of appropriate security.

L. A failure to exercise any right or remedy hereunder shall not operate as a waiver thereof. The rights, and remedies, herein provided are cumulative and not exclusive of any rights or remedies provided by law or in equity.

M. Lessor and Lessee expressly agree this Lease contains the entire agreement between the Lessor and Lessee and supersedes all prior or contemporaneous oral or written agreements, and may not be modified, except as provided for herein, unless said modification is contained in a writing signed by the Lessor and Lessee.

## AUTHORIZED SIGNATURES

Executed as a sealed instrument as of the date first appearing above.

LESSEE: CSC ServiceWorks, Inc

By: [signature]
Authorized Agent

Date: 9/30/2015

Witness: [signature]
Submitted to Corporate Office for Approval

LESSOR: Sunnyslope Investments No. 1, LTD

By: [signature]
Authorized Agent

Date: 9/25/15

Witness: ______

EXHIBIT 1

# Schedule A

**1. Leased Premises Description**

| Location Name | Room Name | Address |
|---|---|---|
| Sunnyslope Terrace | Room 1 | 5383 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 2 | 5385 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 3 | 5387 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 4 | 5407 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 5 | 5405 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 6 | 5403 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 7 | 5401 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 8 | 5411 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 9 | 5391 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Room 10 | 5381 Sunnyslope (1w/1d) |
| Sunnyslope Terrace | Office Hallway | 5383 Sunnyslope (1VTM) |

**2. Other (accessories, renovations, etc.):**

(125) Laundry Smart Cards

9/30/2015

LESSEE (Sales Representative) Date

9/25/15

LESSOR Date

EXHIBIT 1

**LESSOR:**

By: [signature]

Name: RON FOGLE
Title: GEN. MEMBR.

STATE OF Ohio )
) SS
COUNTY OF Cuyahoga )

On this 25 day of September, 2015, before me, the undersigned notary public, personally appeared Ronald M Fogle who is personally known to me or who identified himself/herself by valid photo identification, and who acknowledged to me that he/she signed this document voluntarily for its stated purpose.

NOTARIAL SEAL STATE OF OHIO
CHERYL A. DECAVITCH
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 6-21-20

[signature]
Name: Cheryl L DeCavitch
Notary Public

My Commission expires 6/21/20

EXHIBIT 1

**LESSEE:**

By: [signature]
Name: JAMIE CHABRA
Title: AREA SALES MANAGER

STATE OF OHIO )
) SS
COUNTY OF SUMMIT )

On this 30 day of September, 2015, before me, the undersigned notary public, personally appeared JAMIE CHABRA who is personally known to me or who identified himself/herself by valid photo identification, and who acknowledged to me that he/she signed this document voluntarily for its stated purpose.

NOTARIAL SEAL STATE OF OHIO
KARLIE NEWTON II, NOTARY
STATE OF OHIO
MY COMMISSION EXPIRES: 11/14/2016

KARLIE NEWTON
Name: [signature]
Notary Public

My Commission expires 11/14/2016

EXHIBIT 1

# MEMORANDUM OF LEASE

This MEMORANDUM OF LEASE is entered into as of 9/21/2015, by and between Sunnyslope Investments No. 1, LTD (hereinafter referred to as "Lessor"), and CSC ServiceWorks, Inc (hereinafter referred to as "Lessee"). Lessor hereby does lease to Lessee, and Lessee does hereby accept the exclusive possession of all common laundry room(s), now existing and hereafter created, and located on the real property and improvements consisting of 80 units at: Sunnyslope Terrace, 5383 Sunnyslope Rd., #57, Maple Heights, OH 44137, which real property improvements are herein referred to as the "property" and legally described in Exhibit "A" attached hereto, and by this reference, incorporated herein as though fully set forth. Lessor warrants and represents that only 0 units are plumbed with their own washer and dryer connections.

1. **Exclusive use and possession of leased premises.** Lessor does hereby grant, convey and transfer to Lessee the exclusive use and possession of all common laundry facilities on the property.

2. **Term.** The term of this Lease is not disclosed herein, but is not less than 1 year nor more than 20 years from the date of the lease.

3. **Assignment or Transfer.** This Lease shall be binding upon the parties hereto, their respective heirs, personal representatives, successors, assigns or transferees.

4. Lessor and Lessee have entered into an unrecorded Lease containing the provisions included herein and certain additional provisions. The provisions of the unrecorded Lease are incorporated herein by this reference. A copy of the unrecorded Lease is available for persons having a legitimate interest in the property, at the home office of the Lessee located at 8515 S Freeway Dr., Suite D, Macedonia, Ohio 44056.

LESSOR: Sunnyslope Investments No. 1, LTD

By [signature] (sign) Ron Fegle (print)

Its: GEN. MEMBER

Witness (sign) (print)

Witness (sign) (print)

HOME OFFICE (REQUIRES NOTARY)
LESSEE: CSC ServiceWorks, Inc
8515 Freeway Dr., Suite D
Macedonia, OH 44056

By [signature] (sign) 9/30/2015 (print)

Its: AREA SALES MANAGER

[signature] Witness (sign) Angela Cundiff (print)

Witness (sign) (print)

STATE OF Ohio COUNTY OF Summit

On this 30 day of September, 2015, before me, the undersigned notary public, personally appeared Jamie Chabla, who identified himself/herself by Drivers License, and acknowledged to me as the Area Sales Manager of CSC ServiceWorks, Inc., that it is his/her signature on this document, and that she/he signed it voluntarily for its stated purpose.

[signature]
Notary Public
My Commission expires: 11/14/2016

KARLIE NEWTON II, NOTARY
STATE OF OHIO
MY COMMISSION EXPIRES: 11/14/2016

[SEAL]

Electronically Filed 11/03/2017 15:28 / / CV 17 888502 / Confirmation Nbr. 1216442 / CLJML

EXHIBIT 2

06/20/2005 11:46 FAX ☑002

## STANDARD LAUNDRY ROOM LEASE

FORM LOH

Location of Building(s): Summit Gardens 1101 Summit Gardens Kent, Ohio 44240 Date: October 12, 1998

Area of Leased Space: 500 approx. sq. ft. # of Bldg(s): one # of Apts: 80

Lessee: Coinmach Corporation Lessor: Summit Gardens

Address: 8515 Freeway Drive Macedonia, Ohio 44056 Address: 17420 Harvard Ave. Cleveland, Ohio 44128

Lease Commencement Date: October 12, 1998 Expiration of Original Term: October 31, 2007

Rental: LESSEE shall pay to LESSOR, as rent, Fifty-Eight Percent (58%) of the collections.

See Addendum:

In consideration of the mutual covenants and conditions stated below, the Lessor and Lessee named above agree as follows:

1. LEASE OF LAUNDRY ROOM(S): Lessor leases to Lessee what is commonly known as the "Laundry Room(s)" and/or "Laundry Area(s)" (hereinafter sometimes referred to as the "Laundry Room") being a specific room, rooms, area or areas designated by Lessor and known to the parties, contiguous to plumbing and electrical fixtures, in the premises described above in "Location of Building(s)" for the purpose of installing, operating, servicing and repairing coin operated washing machines and dryers. A further description, photograph, or drawing of the Laundry Room may be attached hereto.

2. OPERATION OF EQUIPMENT. Lessee shall service and maintain the laundry equipment at its sole expense, except for such damages or repairs caused by the Lessor, its agents or employees. Any claim by Lessor of inadequate service must be made by certified or registered mail, addressed to the Lessee, return receipt requested. Lessee shall then have a reasonable opportunity thereafter (not less than 72 hours from the receipt of such notice) to repair or replace any machines not in working order. The selection of laundry equipment and all charges for the use thereof, shall be determined by Lessee.

3. ACCESS TO LAUNDRY ROOM. Lessee shall have exclusive control and possession of the Laundry Room except that Lessor shall have the right of use and access for any purpose necessary for the operation of the Building which does not interfere with the Lessee's operation and maintenance of the Laundry Room or its laundry equipment. The tenants of the Building shall have free and unobstructed access to the Laundry Room for the purpose of using the laundry facilities.

4. RENTAL. As payment to Lessor for rental of the Laundry Room, Lessee shall pay to Lessor at the above address or at such other address designated by Lessor in writing and after the deductions set forth below, if any, the rental stated above at least once every seven (7) months having first deducted therefrom, (a) refunds paid to the occupants of the Building, and (b) a maximum monthly guarantee of a sum equal to the vend price of one cycle per machine per day. Lessor shall have the right to request a field audit from time to time during the term of this Lease, provided Lessor pays to Lessee the prevailing charges therefor. All monies deposited in metered washers, dryers, or other machines installed by Lessee shall be the property of the Lessee and shall be removed and collected by Lessee at such times or intervals which Lessee in its sole discretion deems advisable.

5. UTILITIES. Lessee may connect its laundry equipment to and through the electric, water, heat, gas, sewer lines and ventilation in the Building and use such utilities at no charge to Lessee. Lessor shall maintain all such utilities in good working order. Lessor shall pay and keep current Federal, State, and local fees, taxes, license fees, sales, excise and occupational taxes, use, rental and personal property taxes, if any, and hold Lessee harmless therefrom.

6. EXCLUSIVE LAUNDRY EQUIPMENT. Lessor represents that there is no other laundry equipment presently in the Laundry Room, and that there is no other lease presently in effect or no other lease which will be in force or effect upon commencement of this lease in connection with the operation of any other metered or nonmetered laundry equipment in the building for use by tenants. Lessor shall not during the term of this Lease or any renewal hereof, install, use or permit any other person, tenant, firm, or business to install or use any laundry equipment anywhere in the Building, except as may be provided herein.

7. CONDITIONS OF PREMISES. Lessor warrants that at the time of installation, there will be no building code violation(s) which adversely affects the ability of Lessee to install, operate or maintain its laundry equipment and that the premises have adequate utilities and lighting, including venting, ventilation and floor drainage. Lessor may provide janitorial and housekeeping services for the Laundry Room, including lint removal from dryers, traps, vents and vent pipes, and Lessee hereby grants unto Lessor a revocable license to enter the leasehold premises for that purpose.

8. SECURITY. Lessor shall provide adequate security for the Laundry Room and the Lessee's equipment therein. In the event Lessor fails to provide such security and Lessee's equipment is burglarized or vandalized, then Lessee may, at its option, either terminate the Lease or withhold rentals otherwise payable hereunder unless and until Lessee is reimbursed for its loss and damage resulting therefrom. If Lessee elects to terminate, Lessor shall refund to Lessee the pro rata portion of any advance rentals, construction allowances, leasehold improvements, or other advances paid by Lessee.

9. TITLE TO EQUIPMENT. Title to all laundry equipment and any fixtures, wiring, plumbing, ducts and accessories supplied or installed by Lessee shall at all times remain in and be held by Lessee and Lessor shall have no right to subject Lessee's personal property to any lien or encumbrance. Upon the expiration or termination of this Lease by lapse of time or otherwise, Lessor shall not have the right to remove, move, disconnect, or tamper with the Lessee's laundry equipment, other personal property or fixtures located in the leased premises except where written permission by Lessee has been granted except to perform necessary janitorial or maintenance functions about the leased premises.

10. WAIVER OF SUBROGATION. Lessor shall maintain fire and extended coverage insurance on the Building. Lessor shall make no claim for recovery against Lessee for damages or loss which may arise due to fire or any other peril covered by a policy maintained by Lessor, to the extent of the insurance proceeds received by the Lessor. If any portion of the Building is damaged by any insured casualty, then subject to the rights of any mortgage holder having a lien upon the Building, the Lessor shall repair the damages and restore the Laundry Room to good condition as rapidly as possible.

11. FIRST REFUSAL. At the expiration or termination of this lease, if the Lessor desires to lease the Laundry Room to another person or entity to engage in the business of operating coin operated laundry equipment, and if service is adequate, then the Lessee shall be granted the right to meet any terms of any bona fide offer for a proposed lease. The Lessee shall have 20 days from the receipt of a copy of the proposed lease by certified or registered mail, return receipt requested, to exercise this right of first refusal.

12. INSURANCE. Lessee agrees to procure public liability insurance coverage in limits of not less than $300,000/$600,000 insuring against risks of personal injuries or property damage out of use or operation of Lessee's laundry equipment, but Lessee shall not be responsible for any loss or damage caused by a breach of Lessor hereunder. Lessor does not assume responsibility for any loss, damage, or destruction to laundry equipment by fire, theft or other casualty beyond Lessor's reasonable control or prevention.

13. BREACH OF LEASE. In the event of a breach of this lease, the parties recognize that damages would be difficult to compute and therefore agree that: (A) In the event of a breach of this Lease by Lessor, including but not limited to the unauthorized disconnection of Lessee's laundry equipment, or the installation of laundry equipment by Lessor or any other person, firm or business, at the option of Lessee, either (i) Lessor shall pay to Lessee as liquidated damages and not a penalty an aggregate sum equal to $.60 (fifty cents) per day for each apartment in the Building multiplied by the number of days remaining for the balance of the unexpired initial term and renewal thereof (such number of days determined from the day on which the breach occurred) plus reasonable attorneys fees incurred by Lessee in enforcing this agreement, in which event Lessee shall have the right to remove its laundry equipment and other property any time after such breach and shall have no further obligation to install, maintain or operate such equipment in the subject Building or any other building; or (ii) Lessor consents to the entry of a temporary and/or permanent injunction to restrain any violation of this agreement by Lessor and all persons acting for him or with him, together with reasonable attorneys fees incurred by Lessee in enforcing this agreement; and (iii) such other legal remedy Lessee may choose. (B) In the event of a breach of this Lease by Lessee, at the option of Lessor, either (i) Lessee shall pay to Lessor as liquidated damages and not a penalty an amount equal to ten percent (10%) of the net rental otherwise accrued by Lessee during the period of the breach; or (ii) the right to compel specific performance.

14. TERM. This Lease shall be automatically renewed for a period equivalent to the initial term herein set forth unless either Lessee or Lessor shall give to the other written notice of its intention not to renew at least 100 days, but not more than 160 days prior to the end of the original term of this Lease. At the expiration of the additional period in accordance with the provisions hereof, this Lease shall then continue for successive terms unless terminated by notice within a successive term by either Lessee or Lessor. All notice hereunder shall be in writing by United States Registered or Certified Mail, sent within One Hundred (100) days but not more than One Hundred Sixty (160) days prior to the end of any subsequent term herein. Time shall be of the essence for the termination notice.

15. SUBSTANTIAL REPLACEMENT. In the event Lessor requests in writing the replacement of fifty percent (50%) or more of Lessee's laundry equipment during the term of this Lease, the Lessee may, upon receipt of said written notice and replacement of the laundry equipment, extend the original term of this Lease for a period of five (5) years. All additional renewal terms shall then be enlarged to incorporate the extended original term.

16. AUTHORITY TO EXECUTE. Each party hereto warrants that it has the authority to execute this Agreement and perform its obligations herein. Lessor represents and warrants that it is the owner, beneficiary, lessee with authority to sublet according to the terms hereof, buyer in possession with authority to control or duly authorized managing agent of the Building, that it has good right and lawful authority to execute this Lease and that it has no knowledge of any pending foreclosure, bankruptcy or sale of the Building. Lessee represents and warrants that it is the owner, beneficiary, agent or authorized operator of a laundry equipment/room business.

17. SUCCESSORS. It is the intent of the parties that this Agreement is a lease of real property in the above described premises. This agreement is assignable and shall be binding and shall inure to the benefit of the Lessor and the Lessee and their respective successors and assigns, including any future owners, beneficiaries, grantees, parties in interest or Lessee of the building, it being the intention of the parties that the interest granted to Lessee herein, shall run with the land and Building. Lessor represents that upon transfer of the Building Lessor shall notify transferee of this Lease. Failure of Lessor to notify Lessor's successor in title or interest shall not serve to relieve any subsequent successor of Lessor of its obligations hereunder.

18. ENTIRE AGREEMENT. The Lease Agreement represents the entire agreement between the parties and this Agreement may not be amended, altered or modified unless in writing duly executed by both parties. All of the material and information as above and hereinafter stated, as may be typed, written or printed at or before execution are part and parcel of this Agreement. Both parties reserve the right to insert correct legal description. This Lease may be recorded by either party, the costs of which shall be assessed to recording party. The provisions of this Lease shall be severable, and the invalidity or unenforceability of any provision herein, shall not affect the remaining provision.

19. GOVERNING LAW. This Agreement shall be governed by the laws of the State of where the demised premises are located or as otherwise may be specifically provided for herein.

LESSEE Coinmach Corporation

LESSOR Summit Gardens

Lessor Witness Lessee Witness

Lessee: Adrian F. Verquer Title: Vice-President

Lessor Witness: Dianne D. Hudson

Lessee Witness: Robert Booth

Lessor: Robert Thompson Title

Edna McConahy

EXECUTIVE TITLE AGENCY CORP.

97-81080



DRAFTED BY: Glenn Selden, Esq., 200 N. LaSalle, Chicago, IL 60601

BOOK 473 PAGE 0740

EXHIBIT 2

06/20/2005 11:46 FAX 003

State of *x OHIO*, County of *x Cuyahoga*

Before Me *x Robert R. Thompson* personally appeared as the authorized signatory of the Lessor, who being over 21 years and under oath, acknowledge before me that he/she executed the foregoing Lease for the uses and purposes therein expressed and that the contents hereof are true and correct.

*x [signature]*

Notary Public or Commissioner

CHARLES L. PATTON, JR., Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 R.C.

My Commissioner Expires

State of *Ohio*, County of *Summit*

Before Me *[signature]* personally appeared as the authorized signatory of the Lessee, who being over 21 years and under oath, acknowledge before me that he/she executed the foregoing Lease for the uses and purposes therein expressed and that the contents hereof are true and correct.

*[signature]*

Notary Public or Commissioner

ROBERT BOOTH, Notary Public
State of Ohio - Summit County

My Commission Expires:

©Copyright Macke Laundry Service, Ltd. Partnership 1987

## STANDARD LAUNDRY ROOM LEASE AGREEMENT

Summit Gardens (Lessor)

SSN/FED. I.D.# ______

TO

Coinmach Corporation (Lessee)

Legal Description:

Leasehold Diagram/Photograph

BOOK 473 PAGE 0741

## ASSIGNMENT BY LESSOR

For valuable consideration, the undersigned, the Lessor described in the within instrument, hereby transfers, assigns and sets-over to

NAME: ______

ADDRESS: ______

and to his or its heirs, legal representative, successors and assigns, his entire interest in and to the within lease, and the rent coming due thereunder after ______ 19 ______

Lessee shall be authorized to continue making rental payments under this lease to the original Lessor until Lessee receives a copy of this Agreement and the address for future rental payments to the assignee.

DATED: ______ 19 ______

NAME: ______

BY: ______

## ASSIGNMENT BY LESSEE

For valuable consideration, the undersigned, the Lessee described in the within instrument, hereby transfers, assigns and sets-over to:

NAME: ______

ADDRESS: ______

and to his or its heirs, legal representative, successors and assigns, his entire interest in and to the within lease, effective as of ______ 19 ______

DATED: ______ 19 ______

NAME: ______

BY: ______

EXHIBIT 2



## ADDENDUM TO STANDARD LAUNDRY ROOM LEASE

THIS ADDENDUM made and entered into by and between Coinmach Corporation (LESSEE) and Summit Gardens (LESSOR) this 12th. day of October, 1998 amends the Lease dated October 12, 1998 between LESSOR and LESSEE for the premises located at 1101 Summit Gardens, Kent, Ohio 44240 as follows:

**TOKETTES** LESSOR shll purchase tokettes exclusively from LESSEE. LESSOR shall purchase tokettes for not less than $.42 each or a maximum of the cash equipvalent of 42% of the sales price of the tokette, to the residents of Summit Gardens.

**CERTIFICATION** LESSOR certifies that to the best of his/its knowledge there are no bankruptcy, foreclosure or receivership proceedings pending, as of the date of this Lease, against the property.

Except as may be inconsistent with the provisions of this Addendum, the terms and conditions of the Lease shall remain in full force and effect.

LESSOR: Summit Gardens

WITNESS: X [signature]
WITNESS: X [signature]

BY: X Summit Gardens
TITLE: X [signature] General Partner
DATE: X 10/29/98

LESSEE: Coinmach Corporation

WITNESS: [signature]
WITNESS: [signature]

BY: [signature]
TITLE: Vice-President
DATE: 11-26-98

add-tok

BOOK 473 PAGE 0742

EXHIBIT 2

005

06/20/2005 11:47 FAX

*situated in the* Township *of* Franklin *County of* Portage *and State of Ohio:* and known as being part of Lot 4 in said Township and more fully described as follows: Beginning at a point on the centerline of Summit Street (66.00) feet, said point also being on the East line of said Lot 4; thence S 00 deg 48' 30" W along the easterly line of said Lot 4, 772.00 feet to the true place of beginning; Thence continuing S 00 deg 48' 30" W along said Easterly line, 519.00 feet to a point; Thence N 89 deg 11' 30" W, 533.00 feet to a point; Thence N 00 deg 48 30" E, 185.00 feet to a point; Thence N 89 deg 11' 30" W, 60.00 feet to a point; Thence N 00 deg 48' 30" E, 60.00 feet to a point; Thence S 89 deg 11' 30" E, 200.00 feet to a point; Thence N 00 deg 48' 30" E, 240.00 feet to a point; Thence S 89 deg 11' 30" E, 270.00 feet to a point; Thence N 00 deg 48' 30" E, 34.00 feet to a point; Thence S 89 deg 11' 30" E, 123.00 feet to the true place of beginning and containing 5.3418 acres of land as determined from records by Charles J. Messmore, Registered Surveyor, in October, 1981 but subject to all legal roads, highways, and easements of record.

Reserving to the Grantor an easement for roadway access and for installation or use of utility lines in or over the following described premises:
Situated in the Township of Franklin, the County of Portage and the State of Ohio and known as being part of Lot 4 in said Township and more fully described as follows: Beginning at a point on the centerline of Summit Street (66.00 feet), said point also being on the East line of said Lot 4; thence S 00 deg 48' 30" W along the easterly line of said Lot 4, 772.00 feet to the true place of beginning; Thence continuing S 00 deg 48' 30" W along said Easterly line, 519.00 feet to a point; Thence N 89 deg 11' 30" W, 533.00 feet to a point; Thence N 00 deg 48' 30" E, 185.00 feet to a point and the true place of beginning of the easement area; Thence N 89 deg 11' 30" W, 60.00 feet to a point; Thence N 00 deg 48' 30" E, 60.00 feet to a point; Thence S 89 deg 11' 30" E, 60.00 feet to a point; Thence S 00 deg 48' 30" W 60.00 feet to the true place of beginning and containing 0.0826 acres as determined from records by Charles J. Messmore, Registered Surveyor in October, 1981 but subject to all legal roads, highways and easements of record.

BOOK 473 PAGE 0743

EXHIBIT

06/20/2005 11:47 FAX 006

## ADDENDUM TO STANDARD LAUNDRY ROOM LEASE

THIS ADDENDUM made and entered into by and between Coinmach Corporation (LESSEE) and Summit Gardens (LESSOR) this 2nd. day of November 1998 amends the Lease dated October 12, 1998 between LESSOR and LESSEE for the premises located at 1101 Summit Gardens, Kent, Ohio 44240 as follows:

**ADVANCE PAYMENT** Within a reasonable period of time of the signing of this Lease and Addendum LESSEE shall pay to LESSOR One Thousand Five Hundred Dollars (~~$1,500.00~~) for the laundry room leasehold improvements. LESSEE shall not be subject to this provision again during the term of this Lease. 1,980.00

**CERTIFICATION** LESSOR certifies that to the best of his/its knowledge there are no bankruptcy, foreclosure or receivership proceedings pending, as of the date of this Lease, against the property.

Except as may be inconsistent with the provisions of this Addendum, the terms and conditions of the Lease shall remain in full force and effect.

LESSOR: Summit Gardens

WITNESS: X [signature] BY: X [signature]

WITNESS: X [signature] TITLE: X [signature]

DATE: X 11/9/98

LESSEE: Coinmach Corporation

WITNESS: [signature] BY: [signature]

WITNESS: [signature] TITLE: Vice-President

DATE: 11-26-98

add-2

BOOK 473 PAGE 0744

RECEIVED FOR RECORD AT 10:41 AM/PM

9928947 DEC 14 98

O.R. V. 473 PG. 740-744

LINDA K. FANKHAUSER PORTAGE COUNTY RECORDER

FEE 26.00

INDEXED

EXHIBIT 3

303 Sunnyside Blvd (Suite 70)
Plainview, NY 11803

Slope 60.00 \ month 720.00 \ year




May 17, 2017

Dear Client:

At CSC ServiceWorks, we continue to make significant strides in becoming the best-in-class laundry solutions company. And, we hope you have noticed the changes: improvements in the call center experience, service response time in the field, and processes with our sales and operations teams to deliver a superior consumer service experience for your residents.

As the industry leader, we continue to invest in machine technology and have developed innovative payment options and consumer facing systems to enhance the laundry experience. We are implementing data-driven pricing systems to improve resident retention and enhance client revenues. These are just a few of the exciting initiatives underway at CSC that will increase value for our clients and consumers.

We have made and will continue to make significant investments in our people, systems, technology and service delivery, as well as maintaining a commitment to security and sustainability; but we are also facing increased costs in nearly every aspect of our business. In the past, we have offset some of these costs with efficiency improvements and by leveraging our scale, but we are no longer able to absorb these costs alone.

In the past, we have not used provisions in our agreement with you to share these increased costs. As we continue to align your interests (high occupancy rate of satisfied residents) with ours (to achieve an acceptable operating margin) and to jointly provide a great laundry experience for your residents, it is necessary to begin to share the agreed upon costs as outlined in our agreement.

Beginning this month, you will see an Administrative Fee of 9.75% (or approximately .10 cents per day, per machine) deducted from your gross collections. This deduction will help to offset costs related to taxes, vandalism and applicable administrative and other costs. As a benefit to you, going forward you will receive coverage for events related to vandalism (up to $200 per event). For more information about the Administrative Fee as well as additional benefits you will receive as a CSC customer, visit our website at http://www.cscsw.com/feetransparency/

CSC will also waive any potential claims to recoup its costs related to taxes, vandalism or applicable administrative or other costs which CSC incurred in the past and was entitled to deduct, but did not.

Our 3,000 team members who serve you and your residents, value you as a partner and appreciate your business. As we all continue to work toward providing a best-in-class laundry experience, we look forward to updating you on our progress in the future.

Best regards,

Mark Hjelle
CEO

EXHIBIT 4

303 Sunnyside Blvd (Suite 70)
Plainview, NY 11803




May 17, 2017

Dear Client:

At CSC ServiceWorks, we continue to make significant strides in becoming the best-in-class laundry solutions company. And, we hope you have noticed the changes: improvements in the call center experience, service response time in the field, and processes with our sales and operations teams to deliver a superior consumer service experience for your residents.

As the industry leader, we continue to invest in machine technology and have developed innovative payment options and consumer facing systems to enhance the laundry experience. We are implementing data-driven pricing systems to improve resident retention and enhance client revenues. These are just a few of the exciting initiatives underway at CSC that will increase value for our clients and consumers.

We have made and will continue to make significant investments in our people, systems, technology and service delivery, as well as maintaining a commitment to security and sustainability; but we are also facing increased costs in nearly every aspect of our business. In the past, we have offset some of these costs with efficiency improvements and by leveraging our scale, but we are no longer able to absorb these costs alone.

In the past, we have not used provisions in our agreement with you to share these increased costs. As we continue to align your interests (high occupancy rate of satisfied residents) with ours (to achieve an acceptable operating margin) and to jointly provide a great laundry experience for your residents, it is necessary to begin to share the agreed upon costs as outlined in our agreement.

Beginning this month, you will see an Administrative Fee of 9.75% (or approximately 10 cents per day, per machine) deducted from your gross collections. This deduction will help to offset costs related to taxes, vandalism and applicable administrative and other costs. As a benefit to you, going forward you will receive coverage for events related to vandalism (up to $200 per event). For more information about the Administrative Fee as well as additional benefits you will receive as a CSC customer, visit our website at **http://www.cscsw.com/feetransparency/**.

CSC will also waive any potential claims to recoup its costs related to taxes, vandalism or applicable administrative or other costs which CSC incurred in the past and was entitled to deduct, but did not.

Our 3,000 team members who serve you and your residents, value you as a partner and appreciate your business. As we all continue to work toward providing a best-in-class laundry experience, we look forward to updating you on our progress in the future.

Best regards,

Mark Hjelle
Chief Executive Office



November 10,2017

Dear Customer:

The following is the proof-of-delivery for tracking number **788342062950**.

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered to:** | Receptionist/Front Desk |
| **Signed for by:** | Y.YURI T | **Delivery location:** | 303 SUNNYSIDE BLVD 70 PLAINVIEW, NY 11803 |
| **Service type:** | FedEx Express Saver | **Delivery date:** | Nov 9, 2017 09:38 |
| **Special Handling:** | Deliver Weekday<br>Direct Signature Required | | |



**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 788342062950 | **Ship date:** | Nov 6, 2017 |
| | | **Weight:** | 0.5 lbs/0.2 kg |

**Recipient:**
CSC SERVICEWORKS, INC.
303 SUNNYSIDE BLVD, SUITE 70
PLAINVIEW, NY 11803 US

**Shipper:**
CCoC
1200 Ontario
Cleveland, OH 44113 US

**Reference** CV17888502
**Invoice number** 33719489

Thank you for choosing FedEx.


101539408

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

SUMMIT GARDENS ASSOCIATES ET AL
Plaintiff

CSC SERVICEWORKS, INC.
Defendant

Case No: CV-17-888502

Judge: BRENDAN J SHEEHAN

## JOURNAL ENTRY

CMC BY PHONE SET FOR 01/04/2018 AT 09:45 AM BY TELEPHONE.
CASE MANAGEMENT CONFERENCE (CMC) WILL BE CONDUCTED BY TELEPHONE WITH THE COURT'S STAFF ATTORNEY.

PLAINTIFF'S COUNSEL SHALL INITIATE CONFERENCE CALL WITH ALL OTHER PARTIES AND CONTACT THE COURT'S STAFF ATTORNEY, JAYNE JAKUBAITIS (216-443-8611) PROMPTLY AT THE APPOINTED TIME. PARTIES SHALL HAVE THEIR CALENDARS AVAILABLE AND BE PREPARED TO DISCUSS SERVICE ISSUES, DISCOVERY PROGRESS, SCHEDULING MATTERS, AND ALTERNATIVE DISPUTE RESOLUTION OPTIONS.

THE PARTIES SHOULD NOT WAIT FOR THE CMC BEFORE BEGINNING TO CONDUCT DISCOVERY.

ANY PARTY WHO FAILS TO PARTICIPATE IN THE CMC WILL BE DEEMED TO HAVE ACCEPTED THE SCHEDULING ORDER ESTABLISHED BY THE COURT.

PARTIES MAY REQUEST THAT THE CASE MANAGEMENT CONFERENCE BE HELD IN PERSON WITH THE COURT BY FILING A MOTION AT LEAST SEVEN DAYS PRIOR TO THE SCHEDULED CASE MANAGEMENT CONFERENCE.

Brendan J Sheehan

Judge Signature 11/29/2017

11/28/2017

RECEIVED FOR FILING
11/29/2017 14:03:31
NAILAH K. BYRD, CLERK