**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SUMMIT GARDENS ASSOCIATES, et al.,** | ) | **CASE NO. 1:17-cv-02553** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **v.** | ) | **DEFENDANT'S MOTION TO STRIKE THE COMPLAINT'S CLASS ALLEGATIONS** |
| | ) | |
| **CSC SERVICEWORKS, INC.,** | ) | |
| | ) | |
| **Defendant.** | | |

Defendant CSC ServiceWorks, Inc. moves this Court under Federal Civil Rule 12(f) to strike the class allegations from the nationwide class-action complaint filed by Plaintiffs Summit Gardens Associates and Sunnyslope Investments No. 1, Ltd (collectively, "Plaintiffs").  As set forth more fully in the attached memorandum in support (which is incorporated by reference), class treatment is not appropriate because material variations in the putative class members' various leases and material variations in state law prevent Plaintiffs from being able to meet Rule 23(a)'s requirements of commonality, typicality, and adequacy, and Rule 23(b)(3)'s requirements of predominance and superiority.  This Court should accordingly strike Plaintiffs' class allegations.

Date:  January 16, 2018                  Respectfully submitted,

/s/ *Michael J. Zbiegien, Jr.*
Michael J. Zbiegien, Jr. (0078352)
Daniel H. Bryan (0095309)
Jennifer B. Orr (0084145)
Aaron M. Herzig (0079371)
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
Telephone:  216.241.2838
Fax: 216.241.3707
mzbiegien@taftlaw.com
dbryan@taftlaw.com
jorr@taftlaw.com
aherzig@taftlaw.com

Attorneys for Defendant
CSC ServiceWorks, Inc.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUMMIT GARDENS ASSOCIATES, et al., | ) ) ) | CASE NO. 1:17-cv-02553 |
| Plaintiffs, | ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) | |
| CSC SERVICEWORKS, INC., | ) ) | |
| Defendant. | ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO STRIKE THE COMPLAINT'S CLASS ALLEGATIONS

Michael J. Zbiegien, Jr. (0078352)
Daniel H. Bryan (0095309)
Jennifer B. Orr (0084145)
Aaron M. Herzig (0079371)
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
Telephone:  216.241.2838
Fax: 216.241.3707
mzbiegien@taftlaw.com
dbryan@taftlaw.com
jorr@taftlaw.com
aherzig@taftlaw.com

Attorneys for Defendant
CSC ServiceWorks, Inc.

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................................ 2

ARGUMENT ...................................................................................................................... 5

I.   The multitude of materially different leases between CSC and each class member
     precludes Plaintiffs from meeting Rule 23's requirements ......................................... 6

     A.   Plaintiffs Cannot Establish Rule 23(a) Commonality. ................................... 6

     B.   Plaintiffs Cannot Establish Rule 23(a) Typicality ......................................... 8

     C.   Plaintiffs Cannot Establish Rule 23(a) Adequacy. ........................................ 8

     D.   Plaintiffs Cannot Establish Rule 23(b)(3) Predominance. ............................ 9

     E.   Plaintiffs Cannot Establish Rule 23(b)(3) Superiority. ............................... 11

II.  State law variations preclude Plaintiffs from satisfying Rule 23. .............................. 11

     A.   State laws regarding extrinsic evidence vary. .............................................. 12

     B.   State laws regarding waiver and modification vary. ..................................... 13

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*AmChem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................ 9

*Bowers v. Jefferson Pilot Financial Insurance Co.,*
   219 F.R.D. 578 (E.D. Mich. 2004) ............................................... 12, 13

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
   155 F.3d 331 (4th Cir. 1998) ...................................................... 7, 8, 9

*Fields Excavating, Inc. v. McWane, Inc.,*
   No. CA2008-12-114, 2009 WL 3721013 (Ohio Ct. App. 12th Dist. Nov. 9, 2009) ........... 15

*Foster v. Apache Corp.,*
   285 F.R.D. 632 (W.D. Okl. 2012) ............................................ 11

*Green Road Co., Ltd v. Specialized Component Sales Co., Inc.,*
   69 N.E.3d 1083 (Ohio Ct. App. 8th Dist.) .......................... 14

*Gustafson v. BAC Home Loans Servicing, L.P.,*
   No. SACV 11-915, 294 F.R.D. 529 (C.D. Cal. 2013) ........... 12

*Hanson v. McCaw Cellular Communications, Inc.,*
   881 F. Supp. 911 (S.D.N.Y. 1995) ........................................ 13

*In re American Medical Systems, Inc.,*
   75 F.3d 1069 (6th Cir. 1996) ................................................ 12

*Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc.,*
   No. 1:10-cv-01946, 2010 WL 4628756 (N.D. Ohio Nov. 8, 2010) .................. 10

*Jim Ball Pontiac-Buick-GMG, Inc. v. DHL Express (USA), Inc.,*
   No. 08-cv-761C, 2011 WL 815209 (W.D.N.Y. Mar. 2, 2011) ........................ 7, 11

*Middendorf v. West Chester Hospital, LLC,*
   No. 1:15-cv-439, 2017 WL 3172736 (S.D. Ohio Jul. 26, 2017) ............... 5

*Nassau Beekman, LLC v. Ann/Nassau Realty, LLC,*
   960 N.Y.S.2d 70 (N.Y. App. Div. 2013) .............................. 14

*Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.,*
   69 Cal.2d 33 (1968) ............................................................. 13

*Pilgrim v. Universal Health Card, LLC,*
  660 F.3d 943 (6th Cir. 2011) ................................................................ 5, 6, 11, 12

*Pop's Pancakes, Inc. v. NuCO2, Inc.,*
  251 F.R.D. 677 (S.D. Fla. 2008) ..................................................................... 7, 10

*Rapp v. Green Tree Servicing, LLC,*
  302 F.R.D. 505 (D. Minn. Aug. 5, 2014) ..................................................... 12, 13

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.,*
  601 F.3d 1159 (11th Cir. 2010) ................................................................... 10, 14

*Simington v. Lease Financial Group, LLC,*
  Nos. 10-cv-6052, 11-cv-8125, 2012 WL 6681735 (S.D.N.Y. Dec. 14, 2012) .................... 8, 9

*Vega v. T-Mobile USA, Inc.,*
  564 F.3d 1256 (11th Cir. 2009) ............................................................................ 7

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ................................................................................... 6, 8

**Rules**

Fed. R. Civ. P. 12 ............................................................................................. 5

Fed. R. Civ. P. 23 ....................................................................................... passim

iv

## INTRODUCTION

Plaintiffs propose to sue on behalf of a nationwide class of entities that have leases with CSC ServiceWorks, Inc. ("CSC"), but here, there is no "standard lease" common to all members of the putative class.  Rather, as the lease agreements attached to Plaintiffs' complaint make clear, CSC's leases were negotiated over decades and many were inherited from entities that CSC acquired.  The proposed class's leases vary considerably, both as to the types of payment deductions CSC is entitled to make and as to other material provisions including: governing law, whether the agreement is fully integrated, whether oral modifications are prohibited, whether provisions can be waived by conduct, whether notice and an opportunity to cure is required, whether a prevailing party may recover its fees, whether damages are liquidated, and whether a right to terminate exists.  A summary of these differences is attached as Addendum 1.

These differing contractual terms preclude Plaintiffs from establishing Rule 23(a)'s requirements of commonality, typicality, and adequacy and Rule 23(b)(3) predominance.  Likewise, class adjudication is not superior because this Court or a jury would be required to manually review thousands of leases.

Plaintiffs' problems are magnified because they seek nationwide certification. The laws of the fifty states vary significantly as to pertinent contractual issues, including when extrinsic evidence may be considered and the forms it may take, whether no-oral-modification provisions and anti-waiver provisions can be waived, and the circumstances necessary to demonstrate such a waiver.  These issues are further complicated because not all the class members' leases have merger clauses, no-oral-

modification clauses, or anti-waiver clauses, and even when such provisions do exist, the precise language may vary across leases.  All these factors preclude a finding of typicality, commonality, predominance, and superiority.

Discovery will not alleviate these fundamental problems, so the Court should strike Plaintiffs' class allegations.

## STATEMENT OF RELEVANT FACTS

CSC provides both "multifamily residential" and "commercial laundry" services nationwide.  (Compl. ¶ 7.)  These services consist "among other things" of "leasing laundry room space in apartment buildings, college housing, and other locations from business owners . . . to install laundry equipment for the use of the tenants in those locations."  (*Id.* ¶ 8.)  Under leases between CSC and the building owner, CSC pays as rent to the owner a portion of the proceeds CSC receives from its laundry machines.  (*Id.* ¶ 10.)  CSC operates "over 1 million" laundry machines nationally.  (*Id.* ¶ 14.)

Around May 2017, CSC gave notice that it would begin deducting from its rent payments an administrative fee to offset "costs related to taxes, vandalism, and applicable administrative and other costs."  (*Id.* ¶ 17.)  Plaintiffs' proposed nationwide class consists of all persons (lessors) that entered into laundry-equipment-related leases with CSC or CSC's affiliates, and whose rent payments were reduced by this administrative fee.  (Id. ¶ 28.)

The proposed class encompasses thousands of entities, with decades of lease agreements subject to the laws of many different states.  The leases are not uniform. They have many materially different terms.  Such varied contractual terms go to the

2

heart of whether some or all of CSC's administrative fee deductions (imposed to cover taxes, vandalism, and other administrative fees) are permissible as to any particular putative class member.  Other terms (in some but not all leases) impose conditions precedent to a lessor bringing suit (such as requiring lessor to provide notice of a breach and an opportunity to cure), permit different remedies (*e.g.*, liquidated damages or a right to prematurely terminate the lease), and/or shift attorneys' fees to the prevailing party.

The named Plaintiffs in this action, Sunnyslope Investments No. 1, Ltd. ("Sunnyslope") and Summit Gardens Associates ("Summit Gardens"), both attached their lease agreements to the complaint.  These attachments belie Plaintiffs' allegation that the leases are a "standard" form.  Indeed, Plaintiffs' leases—negotiated almost two decades apart—show radical differences (as summarized in Addendum 1).  By way of example, Sunnyslope's lease is three pages while Summit Gardens' is one; Sunnyslope's lease is with CSC while Summit Gardens' is with Coinmach Corp.; Sunnyslope's lease allows deduction of "all applicable fees" and taxes, while Summit Gardens' allows deduction of vandalism expenses; Sunnyslope's lease shifts attorneys' fees to a prevailing party, while Summit Gardens' does not; Sunnyslope's lease requires 30 days' notice and an opportunity to cure, while Summit Gardens' is silent; Sunnyslope's lease permits a party, following breach, to recover damages and terminate, while Summit Gardens' does not permit termination but allows liquidated damages at 10% of the rent during the breach and provides an option of specific performance; and last, while both leases have a merger clause and a no-oral-modification clause, only Sunnyslope's has an

anti-waiver provision that might give the no-oral-modification provision teeth.  In short, there is nothing "standard" about these two leases.

Indeed, Plaintiffs' counsel contradicts their own allegation that the leases are a "standard" form. Plaintiffs' counsel sent a demand letter to CSC concerning the Ohio leases of four other unnamed putative class members (attached as Exhibit A).  Those leases, entered into between 1986 and 2010, are markedly different from one another and from the named Plaintiffs' leases.  One lacks a merger clause; one references a potential for "arbitration"; two contain a notice-and-cure provision (requiring 21 days' notice instead of 30); and two liquidate lessor's damages (at 25% instead of 10%).  A summary of these differences is also provided in Addendum 1.

The six leases provided by Plaintiffs' counsel (two attached to the complaint and four attached to the demand letter) show marked differences.  Notably, these six leases (attached as Exhibits B through G) all concern Ohio properties and are governed by Ohio law, a small subset of the broad nationwide class Plaintiffs seek to represent.

Examining leases from just two additional states, California and Texas, where similar litigation has recently been filed,[1] shows that lease variations will only increase when class members outside of Ohio are considered.  For example, the lease at issue in the California litigation (governed by California law) has a notice-and-cure provision and permits the recovery not only of taxes but also "occupational fees."  All four leases

---

[1] The California action is styled *Leaps & Bounds, LP v. CSC ServiceWorks, Inc.* (Los Angeles Superior Court No. BC684312).  The Texas action is styled *Alexander House, Ltd., et al. v. Coinmach Corp. d/b/a CSC Service Works, Inc.* (Harris County District Court No. 2017-82773).

filed in the Texas litigation permit taxes and vandalism expenses to be deducted, while

one also permits "processing fees" to be deducted, and another permits a deduction for

"all applicable fees."  Notably, while each of the four Texas leases contains a notice-and-

cure provision, in three of the leases the obligation is limited to service-related

complaints (not the type of litigation at issue here).  Further, two of the Texas leases

have hand-markups altering the printed text.  A summary of the variations in these

additional leases is included in Addendum 1, and the California and Texas leases, as

filed, are attached as Exhibits H through L.

## ARGUMENT

Rules 23 and 12(f) permit a defendant to move to strike class allegations at any

stage of the proceedings.  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th

Cir. 2011) (affirming grant of pre-discovery motion to strike).  In fact, "[a] Rule 12(f)

motion is the preferred method for addressing class allegations that cannot be cured by

discovery."  *Middendorf v. West Chester Hosp., LLC*, No. 1:15-cv-439, 2017 WL 3172736,

at *1 (S.D. Ohio Jul. 26, 2017).

A motion to strike is governed by the same standard as would be a motion to

certify had it been brought by a plaintiff.  *Pilgrim,* at 945-46.  Plaintiffs must demonstrate

compliance with each of Rule 23(a)'s prerequisites (numerosity, commonality,

typicality, and adequacy) as well as, here, Rule 23(b)(3)'s requirements (predominance

and superiority).  *Id.*  Failure to meet any requirement "dooms the class." *Id.* at 946.

In performing a rigorous analysis of a plaintiff's ability to satisfy Rule 23's

prerequisites, the Court is not limited to evaluating allegations in the complaint, but

may probe beyond the pleadings.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011); *Pilgrim,* 660 F.3d at 949.

I.      **The multitude of materially different leases between CSC and each class member precludes Plaintiffs from meeting Rule 23's requirements.**

Plaintiffs here cannot show Rule 23(a)'s requirements of commonality or typicality, nor Rule 23(b)(3)'s requirements of predominance and superiority because there is no standard lease.  Rather, numerous material variations exist between the class members that would require this Court, and potentially a jury, to evaluate thousands of leases individually.  Similarly, Plaintiffs cannot show that they are adequate representatives of the proposed class because they are only seeking one remedy—compensatory damages and disgorgement equal to the fee imposed—to the exclusion of other remedies provided in several of the class members' lease agreements, for example, liquidated damages or early-termination options.  These deficiencies "doom" Plaintiffs' request for class adjudication.  *Pilgrim,* 660 F.3d at 946.

A.      **Plaintiffs Cannot Establish Rule 23(a) Commonality.**

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class."  *Accord Dukes*, 131 S. Ct. at 2551 ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Under Rule 23, "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts."  *Broussard v. Meineke*

*Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998).  In *Broussard*, the court reversed certification and a jury award on a claim brought by a class of franchisees against their franchisor because the terms of the underlying franchise agreements varied.  *Id.*  The court then highlighted the unfairness of permitting Plaintiffs to stitch together an amalgamated "perfect plaintiff" and present a case built on only the contracts and terms most supportive of plaintiff's claims.  *Id.* at 344; *accord Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009) (without a common contract there can be no commonality as to whether charges, even if undertaken pursuant to a uniform policy, constituted a breach of every class member's particular contract).

Similarly, in *Pop's Pancakes, Inc. v. NuCO2, Inc.,* 251 F.R.D. 677 (S.D. Fla. 2008), a putative class of restaurants sued a lessor of beverage equipment alleging that administrative fees were improperly charged.  There, the court concluded that commonality was lacking because, as here, individual leases differed as to what fees could be properly charged.  *Id.* at 683; *accord Jim Ball Pontiac-Buick-GMG, Inc. v.  DHL Express (USA), Inc.,* No. 08-cv-761C, 2011 WL 815209, at *4 (W.D.N.Y. Mar. 2, 2011).

Here, there is no commonality because the class does not share a "standard" lease agreement.  Rather, there exist a multitude of leases such that determining whether CSC properly deducted an administrative fee from the rent due under one lease would not be determinative as to the propriety of the deduction to the class as a whole.  Class certification therefore is not proper.

Variations in other material terms also defeat commonality and, thus, class certification.  In *Simington v. Lease Fin. Group, LLC*, Nos. 10-cv-6052, 11-cv-8125, 2012 WL

6681735 (S.D.N.Y. Dec. 14, 2012) a lessor of credit card swiping equipment was sued in a putative class action for, among other things, breach of contract and unconscionable terms.  The court held that commonality did not exist due to variations in the leases as to "property taxes and administration fees, jury and class action waivers, the LDW fee, default and termination of the lease, and the ability to cancel and/or opt-out of the lease."  *Id.* at *12.  The same wholesale variation exists here and precludes resolution of the class claims with "one stroke."  *Dukes*, 131 S. Ct. at 2551.

### B.    Plaintiffs Cannot Establish Rule 23(a) Typicality.

Rule 23(a)(3) requires a plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  In *Broussard*, the Fourth Circuit concluded that the same contractual variations that precluded a showing of commonality likewise prevented plaintiffs from establishing that their contracts were typical of the class.  155 F.3d at 340; *accord Simington*, 2012 WL 6681735, at *12 ("There is such variability between the different leases, as well as specifically between Avila's and Schomaker's respective leases, that Avila and Schomaker are not 'typical' of the class.").

Here, the same variations that defeat commonality also render Plaintiffs' leases atypical.  Rather than being typical, Plaintiffs' leases are but two variations of many.

### C.    Plaintiffs Cannot Establish Rule 23(a) Adequacy.

Rule 23(a)(4) requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class."  Plaintiffs here cannot make this

showing because their complaint seeks only one remedy, to the exclusion of others available to some members of the class.

Differing remedies for breach are one of the many variances in the many lease agreements within the proposed class.  The named Plaintiffs here are seeking only damages equivalent to the administrative fee, even though some leases specify liquidated damages (in varying amounts) or an option to terminate.  That renders them inadequate to represent class members who have alternative remedies in their leases and who wish to exercise them.  In *Simington*, the court found a plaintiff's pursuit of such damages, to the exclusion of early termination rights, precluded the plaintiff from being an adequate representative.  2012 WL 6681735, at *13.

Similarly, because the remaining length of lease terms vary greatly within the class (and indeed, some leases have undoubtedly expired since the fee was first imposed), the class members will have varied interests as to whether damages are preferable to termination rights.  *See Broussard*, 155 F.3d at 337 ("The first obstacle to class treatment of this suit is a conflict of interest between different groups of franchisees with respect to the appropriate relief.").

### D.    Plaintiffs Cannot Establish Rule 23(b)(3) Predominance.

Rule 23(b)(3) requires a plaintiff to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Satisfying the predominance requirement is "far more demanding" than is commonality.  *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  Accordingly, for at least the same reasons Plaintiffs cannot establish commonality, they also cannot

9

establish predominance.  Indeed, "claims for breach of contract are peculiarly driven by the terms of the parties' agreement, and common questions rarely will predominate if the relevant terms vary in substance among the contracts."  *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010).

In *Sacred Heart*, the Eleventh Circuit reversed class certification because material differences in the payment, termination, and waiver provisions of the class members' contracts precluded a showing of predominance.  *Id.* at 1176.  Here, the same types of contractual variation exist as to the types of fees CSC is permitted to deduct from rent, whether merger and anti-waiver clauses are present, and whether the leases impose pre-suit conditions precedent.

In *Pops Pancakes*, the court found that plaintiffs' breach of contract claim could not satisfy predominance because—as here—even the named plaintiffs had differing contracts with the defendant and further variation existed within the class.  251 F.R.D. at 687.  There, as here, common issues could not predominate because "an individual inquiry would necessarily have to be conducted to determine whether a breach of contract had occurred based upon each contract."  *Id.*

While the wholesale variation of material lease provisions is sufficient to preclude a finding of predominance, the existence of notice-and-cure provisions in some leases is the final nail in the coffin.  The failure to abide by such a provision is fatal to a claim.  *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc.*, No. 1:10-cv-01946, 2010 WL 4628756, at *4 (N.D. Ohio Nov. 8, 2010) (dismissal based on failure to give notice).  The existence of such a provision thus necessitates an individualized inquiry into whether

10

any given class member complied with such an obligation.  *Jim Ball*, 2011 WL 815209, at

*6 ("Individual inquiries would be necessary to determine whether the class members

contested the shipping charges, thus satisfying the condition precedent to suit.").

      **E.**    **Plaintiffs Cannot Establish Rule 23(b)(3) Superiority.**

Rule 23(b)(3) also requires a plaintiff to show that "a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy."  Here,

variation between the leases would necessitate a burdensome manual review of every

agreement to establish whether CSC's administrative fee constituted a breach and

whether pre-suit obligations exist and have been complied with.

Plaintiffs' proposed class covers "over 1 million" laundry machines (Compl.

¶ 14) and encompasses thousands of individual leases.  The leases vary significantly,

with some leases even having hand-written edits to their terms.  When faced with a

similar manual review of the payment obligations in many lease agreements, courts

have concluded that superiority could not be established.  *Foster v. Apache Corp.*, 285

F.R.D. 632, 646 (W.D. Okl. 2012).  This Court should conclude similarly and strike

Plaintiffs' class allegations.

**II.**    **State law variations preclude Plaintiffs from satisfying Rule 23.**

In *Pilgrim*, the Sixth Circuit affirmed the striking of nationwide class allegations

because such a class would have required applying the different laws of many states.

660 F.3d at 948-49.  The Sixth Circuit recognized that variations in state law would make

case management impossible as well as overwhelm any fact issues common to the class.

*Id.* ("'If more than a few of the laws of the fifty states differ,' we explained, 'the district

11

judge would face an impossible task of instructing a jury on the relevant law.'") (*quoting In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)).

While *Pilgrim* and *American Medical Systems* involved consumer protection and tort claims, Plaintiffs here face the same roadblock in certifying a nationwide breach of contract claim because rules on contractual interpretation, extrinsic evidence, and enforcement of no-oral-modification and anti-waiver provisions vary by state. *E.g., Gustafson v. BAC Home Loans Serv., L.P.*, No. SACV 11-915, 294 F.R.D. 529, 544 (C.D. Cal. 2013) (denying certification based on differences among states' breach of contract laws).

### A.    State laws regarding extrinsic evidence vary.

Myriad courts have recognized that state law varies greatly regarding when extrinsic evidence may be consulted to inform a contract's meaning and have refused to certify a class on that basis. *E.g., Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 583 (E.D. Mich. 2004). Indeed, variations in extrinsic-evidence law is a <u>central</u> reason for denying class certification of breach of contract claims. *Rapp v. Green Tree Servs., LLC*, 302 F.R.D. 505, 510-511 (D. Minn. Aug. 5, 2014) ("Figuring out the laws of each of the 50 states with respect to the admissibility of extrinsic evidence would be difficult enough; fashioning a plan for applying those laws on a class basis would be nearly impossible. Many courts have declined to certify nationwide classes on breach-of-contract claims for that reason—sometimes for that reason *alone*.") (emphasis in original).

In *Bowers*, the court analyzed the laws of 14 different states, concluding that several states permit consideration of extrinsic evidence to establish the existence of an ambiguity, others do not permit extrinsic evidence unless the four corners of the

agreement are ambiguous as a matter of law, and some permit the consideration of extrinsic evidence of the parties' intent even when the contract is <u>not</u> ambiguous. *Bowers*, at 581, 583.  The court therefore concluded that mere review (much less application) of varying state laws presented a management difficulty sufficient to preclude class certification.  *Id.* at 584.

Concerns regarding extrinsic evidence are exacerbated here because from the small subset of leases considered, 45% are not fully integrated and lack the very merger clause Plaintiffs' complaint (erroneously) contends ensures that the leases are all "standard."  Even were the putative class's leases all integrated and unambiguous, however, some states would still permit extrinsic evidence to be considered to inform the agreement's meaning, while others would not.  *E.g., Hanson v. McCaw Cellular Comms., Inc.*, 881 F. Supp. 911, 917 (S.D.N.Y. 1995) (holding that California law, unlike New York law, permits consideration of extrinsic evidence to prove the meaning of fully integrated contracts) (*citing Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33 (1968)).  Here, the Court would be forced to consider, as to each class member, evidence of what fees the parties understood could be charged under the leases, as well as what fees were permitted and charged under not only the currently operative lease, but also prior iterations.  That alone warrants striking Plaintiffs' class allegations.  *Rapp*, 302 F.R.D. at 511.

**B.**     **State laws regarding waiver and modification vary.**

The complaint repeatedly alleges that the "standard" leases all contain an "entire agreement" merger clause "requiring that any amendments or modifications to the

Standard Leases occur only through a writing signed by both parties." (Compl ¶ 48; *accord* ¶¶ 11, 40.)  While untrue (nearly half of the leases identified have no merger clause at all), the existence of a merger clause or no-oral-modification clause does not ensure common factual issues.  Rather, state law varies as to whether and how such provisions may be waived, including by the parties' conduct or by oral agreement.  For example, under Ohio law, no-oral-modification provisions can be waived by oral agreement.  *Green Road Co., Ltd v. Specialized Component Sales Co., Inc.*, 69 N.E.3d 1083 (Ohio Ct. App. 8th Dist.).  But New York courts may preclude bare oral modifications. *Nassau Beekman, LLC v. Ann/Nassau Realty, LLC*, 960 N.Y.S.2d 70 (N.Y. App. Div. 2013).

Further complicating matters, in states that permit waiver of no-oral-modification and/or of anti-waiver clauses, the applicable legal standards vary considerably.  In *Sacred Heart*, the Eleventh Circuit noted that although all six states represented in the class purported to have the same waiver standard—"the voluntary or intentional relinquishment of a known right"—the standard as applied varied significantly in whether conduct alone was sufficient proof of a waiver.  601 F.3d at 1180-81 (comparing Florida's law holding that failure to promptly avail oneself of a contractual right is a waiver with Louisiana's law that waiver should only be found in "exceptional" cases).  The Eleventh Circuit then noted that several of the class's agreements also contained anti-waiver provisions—as is the case here—and that state law further varied as to the effect given to such provisions.  *Id.* at 1182-83 (comparing Florida, which enforces anti-waiver provisions, with Georgia, which permits waiver).

14

Thus, for putative class member leases governed by the laws of states that permit no-oral-modification provisions to be waived by oral agreement or conduct, this Court will need to resort to individualized extrinsic evidence as to whether each class member failed to contest or otherwise accepted the administrative fee. And even for leases governed by state laws that enforce anti-waiver provisions, the Court will need to consider the precise language of each anti-waiver provision to determine its scope. In *Fields Excavating, Inc. v. McWane, Inc.*, No. CA2008-12-114, 2009 WL 3721013 (Ohio Ct. App. 12th Dist. Nov. 9, 2009), for example, the court concluded that while anti-waiver clauses were enforceable in Ohio, the particular clause at issue precluded only waivers of rights but did not preclude the waiver of a no-oral-modification provision. *Id.* at *6-8.

The significant variances in state contract law doom Plaintiffs' proposed nationwide class. The management issues associated with conducting a nationwide survey of law regarding contractual interpretation, extrinsic evidence, and waiver are daunting. Presenting so many differing standards to a jury would be impossible. Similarly, the variation in state law as to what extrinsic evidence may be considered and what types of conduct amount to a waiver create individualized issues that swallow any common facts. No amount of discovery will alter this result, so the Court should strike Plaintiffs' class allegations.

## CONCLUSION

For these reasons, the Court should strike the complaint's class allegations.

15

Date:  January 16, 2018                    Respectfully submitted,


                                           /s/  *Michael J. Zbiegien, Jr.*
                                           Michael J. Zbiegien, Jr. (0078352)
                                           Daniel H. Bryan (0095309)
                                           Jennifer B. Orr (0084145)
                                           Aaron M. Herzig (0079371)
                                           Taft Stettinius & Hollister LLP
                                           200 Public Square, Suite 3500
                                           Cleveland, Ohio 44114
                                           Telephone:  216.241.2838
                                           Fax: 216.241.3707
                                           mzbiegien@taftlaw.com
                                           dbryan@taftlaw.com
                                           jorr@taftlaw.com
                                           aherzig@taftlaw.com

                                           Attorneys for Defendant
                                           CSC ServiceWorks, Inc.

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2018, the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.

/s/ *Michael J. Zbiegien, Jr.*
Michael J. Zbiegien, Jr. (0078352)

# ADDENDUM 1

| Ex. | Original Lessor | Original Lessee | Year | Pages | Governing Law / Forum | Taxes | Vandalism Expenses | Other Fee Deductions | Other Rent Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| B | Sunnyslope Investments No. 1, LTD | CSC Service Works, Inc. | 2015 | 3 | § 9: Ohio law; permissive selection of Ohio courts | § 3: Deducted from rent | § G: CSC right to terminate | § 3: "all applicable fees" | § 3: CPI adjustment; vacancy adjustment; § F: non-exclusivity adjustment |
| C | Summit Gardens | Coinmach Corp. | 1998 | 1 | § 19: Ohio law | § 5: Lessor to pay | § 8: Deduct expenses from rent | | |
| D | FARH Deerfield Affordable Housing, Inc. | Coinmach Corp. | 2010 | 1 | § 1: Ohio law; § 16: "In the event of any litigation or **arbitration**" | § 5 Deducted from rent | | § 5: "any other applicable charges" | § 5: CPI adjustment; vacancy adjustment |
| E | Oakleve Apartments-Columbus, LLC | Coinmach Corp. | 2009 | 2 | | § 2: Deducted from rent | | | § 2: CPI adjustment |
| F | Consolidated Management Inc. | Macke Laundry Services, Inc. | 1986 | 6 | § F.(9): Ohio law | | | | |
| G | North Canton Properties | Macke Laundry Service, L.P. | 1989 | 6 | § F.(8): Ohio law | | | | § C: Occupancy and pricing adjustments. |

1

| Ex. | Original Lessor | Original Lessee | Year | Pages | Governing Law / Forum | Taxes | Vandalism Expenses | Other Fee Deductions | Other Rent Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| H | Leaps and Bounds, LP | Coinmach Corp. | 2012 | 2 | § K: California law | § 1: Deducted from rent | | § 1: "occupational fees" | |
| I | Alexander House, LTD | Coinmach | 2015 | 2 | Not specified. (Texas premises) | § 2: Deducted from rent | § 2: Deduct expenses from rent; § 7: CSC right to terminate | | § 2: CPI adjustment |
| J | Brickhaven Apartments, LP | Coinmach | 2015 | 2 | Not specified. (Texas premises) | § 2: Deducted from rent | § 2: Deduct expenses from rent; § 7: CSC right to terminate | § 2: "processing fees" | |
| K | Grayridge Apartments, LTD | Coinmach | 2014 | 2 | Not specified. (Texas premises) | § 2: Deducted from rent | § 2: Deduct expenses from rent; § 7: CSC right to terminate | | § 2: CPI adjustment |
| L | Sharpstown Apartments, LTD | CSC Service Works, Inc. | 2016 | 3 | § 9: Texas law; permissive selection of Texas courts. | § 3: Deducted from rent | § 3: Deduct expenses from rent; § G: CSC right to terminate | § 3: "all applicable fees" | § 3: CPI adjustment; § F: non-exclusivity adjustment |

**Additional Chart Columns Continue Below:**

2

| Ex. | Original Lessor | Merger Clause | No-Oral-Modification Clause | Anti-Waiver Clause | Notice-and-cure provision | Fee-shifting provision | Liquidated Damages | Lessor Right to Terminate | Current Term / Expiration |
|---|---|---|---|---|---|---|---|---|---|
| B | Sunnyslope Investments No. 1, LTD | § M | § M | § L | § H: "30 days" | § H: "prevailing party" | | § H: After notice if no cure. | § 2: Expires 2025 |
| C | Summit Gardens | § 18 | § 18 | | | | § 13: 10% of rent | | § 14: Expires 2025 |
| D | FARH Deerfield Affordable Housing, Inc. | § 16 | § 16 | | | § 16: "prevailing party" | | | P. 1: Expires 2020 |
| E | Oakleve Apartments-Columbus, LLC | | | | | § 13: "prevailing party" | | | § 1: Expires 2019 |
| F | Consolidated Management Inc. | § F.(12) | § F.(12) | § F.(10) | § F.(1): "(21) days" | | § F.(5): 25% of rent | | Addendum B: Expires 2018 |
| G | North Canton Properties | § F.(11) | § F.(11) | § F.(9) | § F.(1): "(21) days" | | § F.(5): 25% of rent | | Addendum A: Expires 2018 |
| H | Leaps and Bounds, LP | | | § R. | § A: "(30) days" | § K: "prevailing party" | | | P. 1: Expires 2022 |

3

| Ex. | Original Lessor | Merger Clause | No-Oral-Modification Clause | Anti-Waiver Clause | Notice-and-cure provision | Fee-shifting provision | Liquidated Damages | Lessor Right to Terminate | Current Term / Expiration |
|---|---|---|---|---|---|---|---|---|---|
| I | Alexander House, LTD | | | | § 16: "(10) working days" as to service complaints | § 8: "prevailing party" | | § 16: After notice if no cure, as to service complaints | § 1: Expires 2023 |
| J | Brickhaven Apartments, LP | | | | § 16: "(10) working days" as to service complaints | § 8: "prevailing party" | | § 16: After notice if no cure, as to service complaints | § 1: Expires 2020 |
| K | Grayridge Apartments, LTD | | | | § 16: "(10) working days" as to service complaints | § 8: "prevailing party" | | § 16: After notice if no cure, as to service complaints | § 1: Expires 2020 |
| L | Sharpstown Apartments, LTD | § M | § M | § L | § H: "30 days"<br><br>§ 12: "(10) working days" as to service complaints | § H: "prevailing party" | | § H: After notice if no cure.<br><br>§ 12: After notice if no cure, as to service complaints | § 2: Expires 2023 |